Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Thank you, Mr. Robinson. Appreciate you being with us this morning and thank you, Mr. Barrera, for organizing us. Welcome. We wish we were together in person this morning, you know, kind of longing for Jacksonville, which I never thought I'd say, but I'm sorry I didn't get word to counsel that we would give you the first two minutes of your argument uninterrupted. I know you just got word of that this morning, but we'll try to observe that and otherwise I'm gonna try to enforce time limits. With regard to our first two cases, which we've combined, I wanted to give credit to my colleague Judge Brasher, who is an experienced appellate advocate and he thought of combining the two cases that that might give us a more cohesive presentation of the issue that those cases share. So thanks to Judge Brasher on that. And with that, I will call the first two cases. I believe, Mr. Hopwood, you're going first? That's good to see you, Judge. You can proceed. Good morning, Your Honors, and may it please the Court. Through the First Step Act, Congress removed the BOP Director as gatekeeper of the Federal Compassionate Release Program so that courts can find a defendant's circumstances extraordinary and compelling and grant relief, even when the BOP Director disagrees. The question here is whether parts of the sentencing guideline criteria for compassionate release conflict with the First Step Act and are thus not an applicable policy statement that district courts are bound by. In 2007, the Sentencing Commission recognized that there would be circumstances outside the medical, age, and family criteria that warrant compassionate release. So it created a standalone ground for relief, the other reasons provision. But in conflict with the First Step Act, the Commission conditioned this ground for relief on the BOP Director finding the defendant's other reasons are extraordinary and compelling. The government does not seriously dispute this conflict. The only real dispute is over what parts of the policy statement are still applicable after the First Step Act. One route is to do what the Second Circuit did and find that the entire policy statement only applies to motions brought by the BOP Director. The other route is to find that the other reasons provision remains but can no longer require a determination by the BOP Director that a defendant's circumstances are extraordinary and compelling. A judge would then be free to decide if other reasons exist, even if the BOP Director disagrees. Whatever route this court chooses, the district court here erred as a matter of law and holding that because Mr. Bryant's circumstances did not involve age, family, or medical issues, the court was without authority to find that the other reasons were extraordinary and compelling enough to warrant a sentence reduction. Now, I want to start with the government's main argument here. And if the court did not realize that it's a policy-based argument, it's the same argument the government would give if it was standing before the Sentencing Commission. And that argument is if the court allows district court judges to find other reasons, the world's going to end. And judges can have a mere disagreement with the district court judges and grant compassionate release on those grounds. That is simply wrong. For one, we are now two years after the First Step Act, and the government can cite to no court decision, no district court decision, where a judge has actually done this. Even if a judge were to lodge a policy disagreement with a mandatory sentencing provision, this court could reverse for ubiquitous in federal law, and by its own definition, could not be extraordinary. And so, you know, the court need not fear having judges decide these cases now. And Congress did not fear judicial discretion when it enacted the First Step Act. Indeed, going back to 1984, Congress was aware that the Sentencing Commission may create very broad criteria and allow judges to find what are extraordinary and compelling circumstances. Yet Congress concluded the only way for compassionate release to work was if judges had this authority rather than the Bureau of Prisons. Let me ask you a question about that. One of the government's arguments that I think has some force here is that Congress only made a change to who could file the motion and not a change to any of the substantive elements that a district court has to look at in this case. So what do you say about that? Well, one, I'd say we're not arguing for a change in the criteria. The government is. We're asking the criteria that the Sentencing Commission created to apply, just not those parts of the criteria that are in conflict with the First Step Act. And second, Congress didn't just change the process. When Congress took the BOP's gatekeeping rule, it changed two things. One, that judges could find that circumstances are extraordinary and compelling even when the BOP director and the government disagrees. And the government does not dispute that was the practical result of the First Step Act. And so that brings the other reasons provision in direct conflict with what Congress was trying to do with the First Step Act. Congress had a DOJ Inspector General report that said there were people that met the criteria under the guidelines, but BOP was not moving for their release. To my knowledge, the BOP not once used the other reasons provision. And so, you know, the part of the other reasons guidelines criteria that says, as determined by the director of the Bureau of Prisons, is in direct conflict with the First Step Act, which authorized courts to have the power to determine what is extraordinary and compelling under the guidelines criteria without regard to what the BOP director and without regard to whether or not the government opposes. And so Congress was aware of what it was doing, and it made two changes at once. It allowed defendants to file motions, and it also allows courts to grant and find that certain circumstances are extraordinary and compelling even when the BOP director disagrees. Let me ask you another question. So we've got the Second Circuit's analysis of this, and then we've got sort of the under your view of this, why isn't the right result to say that the other reasons provision itself is inapplicable, and that entire provision falls away instead of continuing to apply that provision, but just not the part about BOP? Well, for one, that would be, I think, rewriting the guidelines criteria. And I, you know, take it that the court does not want to be in the business of rewriting the guidelines criteria, so you would not want to say that that entire provision is no longer applicable. You would just want to find the parts that conflict with the First Step Act are no longer applicable. The Sentencing Commission created the other reasons provision as a standalone ground for relief. That provision says a reason other than or in combination with medical, age, and family criteria can constitute extraordinary and compelling grounds, and that provision should remain in force because it's not in conflict with anything Congress did in the First Step Act. The only part that's in conflict is the preface where it says, as determined by the director of the Federal Bureau of Prisons. And so we're not asking you to rewrite anything, Your Honor. We're just asking you to find that the parts... Well, I guess that's my question, which is why is the right part to take out just the preface but to leave the substantive part there instead of just saying, look, the commission wrote this. It says the BOP gets to decide, and if the BOP decides there are extraordinary circumstances, then the court can examine that. Why shouldn't we view that as one entire sort of policy statement and say, look, if anything falls here, it's this statement itself doesn't apply to a defendant-filed motion, but everything else does, but this statement doesn't? I mean, why isn't that the right result? Because under a severability analysis, you would want to leave stand everything you could that was not in conflict in the same way as you would do with part of a statute that's unconstitutional. You would sever the part that's unconstitutional and leave as much as possible to remain. Here, the only reason the Sentencing Commission directed that other reasons are the statute required in 2007 when the Sentencing Commission created this, and so that's a stand-alone ground for relief. That should remain. Nothing in that other reasons provision conflicts with the First Step Act except for the part that conditions a determination of extraordinary and compelling on the director. Council, does the statute as currently amended contemplate that the BOP will file motions either on its own or after the administrative process has been exhausted? It does, Your Honor. Given that that is still contemplated, and we're looking at a severability analysis, in other words, save what needs to be saved, which is sort of what the driving part of your argument is, how is it not, I guess, how is 1D not or in conflict when the statute itself still contemplates a role for the BOP director? So why can't it be read as 1A, 1B, and 1C when files a motion, and 1D specifically applies when the BOP director files a motion, which is still contemplated by the statute after amended by Congress? Well, Juan, Your Honor, I don't think that's how the guidelines criteria is written. The guidelines criteria says medical, age, family, other reasons can all be substantive grounds for relief, and it doesn't distinguish between who brought the motion other than... But doesn't it? In other words, 1D does seem to say, as none of the others do, as determined by the director of the Bureau of Prisons. It did, but that's only because in 2007 that was the only way a court could find relief here, and one thing I would argue is that... But Counsel, isn't that true as to A, B, and C? In other words, A, B, and C also before First Step Act can only be brought by the director, and yet the commission specifically said it couldn't be... Didn't preface it as as determined by the director of Bureau of Prisons. Given that that's the case for the catch-all provision, or the safety valve, or however you want to term it, and we're looking at how to save as much of this as we can, can we look at this not in conflict, but that A, B, and C apply to motions brought by defendants, and D only applies to motions brought by BOP? I don't think looking at the any distinction between people who brought motions, or defendants who brought motions versus BOP filed motions. The criteria doesn't distinguish between those two, and so here you have a substantive ground for relief that the Sentencing Commission acknowledged, in part because the 1984 Congress wanted this. That Congress said that it was going to take away federal parole and replace it with 3582, which it concluded was a safety valve to correct unusually long sentences. If all of this, though, if all of this is in conflict, in other words, if all the grounds could only have been brought in 2007 by the director, then doesn't the whole thing fall? No, the whole thing wouldn't fall. You would still want to keep in place those parts of the guidelines criteria. They're no longer applicable unless you decide to do what the Second Circuit did, and say that the entire policy statement's in conflict. Okay, so if I'm trying to do what you suggest that we do, can't I say with doing as little damage as possible that A, B, and C, without touching anything, A, B, and C apply as stated to everybody, and D only applies as stated to those things found by the director of the Bureau of Prisons, which is still contemplated by the Act after the First Act? Yeah, and, Your Honor, I would say that that's rewriting the guideline criteria to take a substantive ground of relief away. Isn't that exactly not writing, in other words, isn't rewriting it like taking a pen to as determined by the director of Bureau of Prisons, whereas the way that I just suggested actually isn't touching it at all? Well, it would be because it would take, I see my time's up, Your Honor. You can go ahead and answer, and I actually have a follow-up question as well. I would say that where the Sentencing Commission has created substantive grounds for relief, you cannot take those away. You can only take away the part that's actually in conflict, and the other reasons provision is a substantive ground. It says other than or in combination with medical agent and family criteria, and so it's a standalone ground for relief that I don't think you can just excise because that ground by itself is not in conflict with the First Step Act. Actually, I'm not going to ask my question. Thank you, Mr. Hopwood. We'll hear from you on rebuttal. And Mr. Weiss, I hope I'm pronouncing your name correctly. Yes. Thank you, Your Honor. Good morning. Good morning. Baruch Weiss from Arlington Porter, Washington, D.C. for Ms. Winner. Ms. Winner, back in April, sought before the district court to be either released or alternatively to a hearing so that she could make her compassionate release argument. The argument that she wanted to make was a COVID-based argument based both on the situation in her facility in the prison and based on her personal circumstances, her health, both physical and mental. At the urging of the government, the district court, as we all know, denied her motion, did not even give her an opportunity to be heard, essentially for three reasons. One is a procedural administrative exhaustion reason, which I will address. The second is the question of the guidelines, extraordinary and compelling. You've just heard an argument from Mr. Hopwood, and we're going to incorporate that argument by reference so that I can address the other two issues. Of course, if you have any specific questions you want to direct to me on that, I welcome that. But if you don't, I'll address the other two issues that are specific to my client. And then third, the judge volunteered, the district court volunteered, that even if he were to consider the case on the merits, he would exercise his discretion mostly based on the fact that she's in a prison with an affiliated hospital, that there's no reason to release her, that she's really not in danger, and that the COVID basis for release is not really a basis for release, especially given the facility where she was incarcerated. We are here now in November trying still to get her released or alternatively to get Ms. Winner a hearing. I'd like to begin first by talking about the administrative exhaustion argument, which takes two forms, one which I'd like to address rather quickly unless the court has any questions, and the other one I'd like to spend some time on. The government essentially makes two arguments with respect to this alleged failure to exhaust administrative remedies. We all know, we all acknowledge that the statute contemplates that a incarcerated defendant will turn first to the Bureau of Prisons, and under the First Step Act, if that person, if that defendant doesn't get relief, can come to court. The government here says there are two reasons why the administrative exhaustion requirements were not met here. The first is that when Ms. Winner filed with the Bureau of Prisons, she did not file for a compassionate release pursuant to 3582, but rather she filed something else. She filed a request for home confinement. The government distinguishes between the two and says this was not really a request for a reduction in sentence, and therefore she never filed administratively what she needs to file to get the ball rolling. With respect to that, let me just say that's just incorrect. She specifically cited 3582C1A1 in all the paperwork that she submitted. Russell, I can tell you I've reviewed the record, and I'm not convinced by the government's argument. I can only speak for myself. I'm much more interested in your argument on the administrative exhaustion. So for me, it'd be more helpful to talk about it. Okay, good. So let me then move to the second part of the administrative exhaustion argument, which I think is the more colorable argument, and that is the fact that the district court judge at the government's urging found that the motion was premature. We have two arguments with respect to that we'd like to make to the court. The first one is that doesn't matter anymore because more than 30 days has elapsed since April, and so that argument, in our view, is now gone. Whether it was accurate or not before the district court doesn't matter. What matters now at the time that we're asking this court to act. That is the first argument that we're making, and I think that the government's argument that stems from a misreading of the plain language of the statute. The government reads the administrative exhaustion requirement of the statute as if it bars a defendant from filing a motion until the 30 days has elapsed, or if there's been a complete failure by the Bureau of Prison. But I'll call the, there are two prongs there. I'll just call them 30 days for for ease of convenience. In the government's view, that language applies to what the defendant can do. That is a misreading, in my view, of the statute because the statute, by its very terms, doesn't govern what the defendant can do. It governs what the court can do. If you look at 3582C, it begins with the language that says the court may not modify a term of imprisonment except that in any case, the court, and I would read the statute, and I think the plain reading of the statute is that the defendant can reduce. That is a plain reading of the statute. And therefore, it doesn't matter, in our view, if the defendant file before the 30 days is up or after the 30 days is up. This statute says the court can't rule before the 30 days. But now we are asking this court, which has jurisdiction, and by the way, the government has conceded that this is not a jurisdictional analysis here. So the district court and the court of appeals have jurisdiction. We are asking the court to exercise its jurisdiction to act, to release, or remand for a hearing because more than 30 days has elapsed. And that is our first argument. So all of these issues about whether the statute is jurisdictional, whether it's a claims processing, whether it doesn't matter, because even if it's all of that, more than 30 days has elapsed, and therefore, the statutory requirement for exhaustion of remedies has been met, and the court can act. That is our view. Our alternative argument is that even if... Let me ask you just a quick question about that. Yes. Is it your position, therefore, that you could file in court an action before you actually go through the administrative procedure at BOP, as long as BOP is given 30 days at some point during the course of that litigation before the court acts? Well, we don't have... I'll answer that question, but let me say, of course, here, she filed after she filed with BOP. She didn't file before. She didn't wait 30 days. That's true. She filed with BOP. Could she file even before she files in BOP? I don't think the court has to reach that question here. The question that you need to reach here is if she files first with BOP, and then she files with the court, do we say that the court must dismiss, or do we read the statute and simply say the court shouldn't act until the 30 days lasts? Yeah, I guess. I mean, I get that that's not the specific issue presented here, but it seems like that would be the natural result of your argument, that if we adopted a review of this statute that someone could file in court, there could be litigation in court that goes on for years. And basically, all that would be required is that the district court, before it rules, it gives the BOP 30 days to evaluate the issue and to make its decision. I think that would be an extreme reading of the statute in an extreme situation. Again, I don't think we have to reach it here, but I read the statute as saying it limits the court of the power to reduce the sentence. It doesn't restrict the time in which the defendant files. Did the district court rule before the 30 days? Yes. So if reading of the statute your way isn't the question before us, did the district court err in its conclusion that it was not authorized to grant the motion or to rule on the motion before the 30 days are up? Isn't that our legal issue? Well, I think so, although I might phrase it a little bit differently, Your Honor. I'm sure you would. Why don't you answer my question and then you can rephrase it. Yes, thank you, Ron. So the district court didn't simply say, I'm not going to rule, and right now, because the district court had jurisdiction, and remember the government has withdrawn its no-jurisdiction argument, so the district court had jurisdiction, and now this court has jurisdiction, and the 30 days is up. So my view is, on behalf of the district court, we don't have to decide whether the district court was right or wrong in dismissing versus holding it until the end of the 30 days, although my view is he should have just held it until the end of the 30 days. You're saying the district court is required to not rule until then, even though the statute says it's not authorized to rule until the 30 days are up? I mean, why does the district court have to sit on a motion, especially where your client has said, this is so important that I need emergency briefing right now? Yes, yes, although he didn't expedite. He refused to expedite, but he ruled quick. This was a pretty quick process by the district court. You've got to give him a lot of credit. I do. It was a very quick, non-expedited proceeding below. Yes, yes, Your Honor. And I will also concede, Your Honor, that the statute says that he can't reduce the sentence until 30 days is up. It doesn't say he can't reject the motion. It doesn't say that. In other words, I read the statute saying if he's inclined to reduce, he does need to wait for the 30 days, but once the 30 days is up, he can reduce. Of course, here he didn't want to reduce, but we're saying that was error. And so the question now before the court is when we're asking for that reduction and we're asking to be released or for a hearing, at this stage in November, does what happened until now preclude this court from either releasing or remanding back to the district court for a hearing? Certainly the 30-day administrative requirement doesn't preclude that. Even if he was entirely within his rights to deny her motion within the 30 days, we appeal. That preserves jurisdiction in this court. Jurisdiction is now here. Again, the government doesn't contest jurisdiction. It's withdrawn its jurisdictional argument. So the courts have jurisdiction. They've had jurisdiction since April, and 30 days has elapsed. So there is now no bar to allowing any court that has jurisdiction to reduce the sentence if that court believes it is an appropriate step. Before your time runs up, let me ask a quick question about what we talked about with Professor Hopwood. As between these two arguments, the Second Circuit argument and the sort of severability argument I think that Hopwood is making, which one do you subscribe to? Do you sort of want to throw in? Thank you, Ron. Either one of those arguments, of course, gets us where we want to go on behalf of our client, which is that the extraordinary and compelling clause should be available for consideration by the court. In my view, if we were to take the non-Second Circuit alternative that Professor Hopwood offers here, we have the advantage that we preserve all four clauses, both for the court and for the Bureau of Prisons. And I understand Judge Luck's questions, his very pointed questions on that point, but I think that we can't forget here that the entire the Bureau of Prisons did not. And if we were to say that what I think the most important clause of the four is, the one that gives the most discretion, is not attributable, is not allowed, is not available to a district court, but is available only to the Bureau of Prisons, which almost never exercised its judgment in such a tiny handful of cases, then I think we're doing clear violence to what Congress intended. And I think the simple answer is, what Congress intended was to enact the statute, and then the Sentencing Commission would step in and fix it in accordance with their intent. But the Sentencing Commission hasn't had a quorum. If they had had a quorum, I have no doubt, again, I can't say with absolute certainty, but I have little doubt, I should say, that the Sentencing Commission would then have stepped in and fixed that provision so that it would match the clear intent of Congress and give the district court the widest availability of remedies, which is what Congress wanted to do. It said, the Bureau of Prisons is not doing its job here, we've got to get these people released, let's give it to the district court. But then to give district court three out of the four, but not the most important one, not the broadest one, not the most compelling one, was clearly not what they would have intended. And if not for this happenstance of a lack of quorum, this would have been fixed. How long has it been since the Sentencing Commission had a quorum? Do you know? I can tell you. I'm sorry, Your Honor, I don't. I know it's during our relevant time period. It's been a while. Yeah. It's been a while. I'm sorry, I don't know. Oh, no, that's all right. I can look it up. I see I went way over my time. I'm happy to answer more questions if the court has any, or I have rebuttal time, I'm happy to answer questions then as well. And we'll, if my colleagues don't have any more questions of you, we'll give you the time you reserve for rebuttal. Thank you. Mr. Davids? I am pleased to court. Thank you. My name is Justin Davids. I'm an AUSA in the Southern District of Georgia, and I represent the Appalachian United States of America in both of these cases. And I'm going to start out with the main argument for Brian, and then we'll get to the administrative exhaustion part after that. As it relates to Brian's issue mainly, federal courts are courts of limited jurisdiction. In the sentence reduction context, this was recently reaffirmed by this court and USV Jones and USV Denson, where the court explained that the district court lacks the inherent authority to modify a term of imprisonment and may do so only if Congress has provided a narrow exception to the rule of finality under 3582C. Here it is the appellant's burden to show where in the US code Congress has allowed district courts to define for themselves what is extraordinary and compelling reasons for a sentence reduction under 3582C1A. They cannot because Congress did not. Rather, the statutory scheme contains three distinct roadblocks demonstrating that Congress intended to limit the district court's ability to make policy in this way. One, it required that any sentence reduction under 3582C1A be consistent with the applicable sentencing guidelines policy. Two, it directed the Sentencing Commission in 28 U.S.C. 994A2 to generally come up with guidelines that apply to section 3582C and then in section 994T. It specifically required the Sentencing Commission to come up with the definition of extraordinary compelling circumstances and the criteria for those. And then third, Congress in 3582B set the general default that sentences are final and cannot be revisited by the district court. When Congress passed the First Step Act in 2018 and it's specifically evaluating 3582C1A, it left all of these limiting principles in place. Section 3582C1A then is the exact opposite of a statute providing broad decision-making to the district court. Instead, it is consistent with Congress's desire to provide limited exceptions to otherwise final judgments. To adopt the appellant's position would run counter to this statutory scheme and for those reasons, that's why we believe this court should affirm the district court's decisions. Counsel, what if I believed that the whole thing was inapplicable? In other words, as I read 3582 here, it requires that only applicable policy statements are, the sentence must be consistent with applicable policy statements. If I were to find that the policy statement is motions by the Bureau of Prisons, and of course this is not a motion by the Bureau of Prisons, this is a motion by a defendant, then isn't there no other applicable policy statements for which that there needs to be a consistent sentence? Your Honor, that interpretation rests on the Act. It's really an orientation to the statute in which the Sentencing Commission intended to promulgate its rules on. In fact, it describes- But Counsel, except that Congress was clear that there is a rule for the Bureau of Prisons. In other words, the Bureau of Prisons does still file motions. In fact, as I read the First Step Act, we want to principally rely on the Bureau of Prisons because A, they can file motions on their own. B, we give them the first look of the 30 days in order to file one in there. And C, the statute in another portion, as I think Mr. Opward's brief has said, specifically says that we're going to keep track of this, so we want to know how many BOP are filing because BOP hadn't been doing its job in the past. So given that the statute specifically contemplates a role for BOP, how can we look at upon motion of the Director of Bureau of Prisons under 18 U.S.C. 3582c1a as not directed language at exactly those sorts of motions? Well, because I don't think that that was the authority of the Sentencing Commission really to determine or to authorize any procedural ability on these motions. 994a2 and 994 subsection T are Congress directing the Sentencing Commission to come up with the substantive criteria for extraordinary and compelling. So that part of the guidelines, frankly, is an orientation, and it's not really operative as to the purpose of that guideline. How's it not, though? If it's not operative when the statute specifically contemplates motions by the Bureau of Prisons, how can we say that it's not operative when that very thing still exists in the statute? Congress certainly could have said cut out the BOP completely and just allowed motions by the defendant, in which case there truly would be a conflict, and I might be inclined to agree with you, but where there's still a role for BOP and this language is still in there, how can we say then that this guideline is applicable to anything other than motions by BOP? Well, because, again, Your Honor, I don't believe that if we're looking at what's in conflict, I don't believe that this is in conflict because, again, I don't believe it's operative. Even if we're, even if, though, we would assume that it is somewhat operative and that we can somehow separate BOP-filed motions versus motions filed by, directly by the defendant. Well, doesn't the statute do exactly that? It does, it does, but it does that, but even motions filed directly by a defendant have to be first administratively exhausted through BOP. It still envisions, even where those defendants file a motion, that BOP has the role, it's the first-line decision-maker. Right, but where BOP explicitly declines, in other words, it's taking a look, it's saying, I got to pass, we don't think it applies, the defendant then files a motion. Sure. I think we can also look at 1B1.3, though, as, in a sense, Congress delegating its authority to define a statutory term, in this case, extraordinary and compelling. There's no doubt that that's true, but the statute also says that only applicable provisions apply, and so that's the part that I think I'm hung up on, and the fact that Congress, knowing this guideline, I mean, Congress knew this was there. As you said, they delegated to the Sentencing Commission its existence, so knowing this is there, knowing what it says, it's still leaving a role for BOP when it easily could have cut BOP completely out of the picture. How can we say that this is an applicable guideline? Well, Your Honor, here is a way that I think that doesn't address necessarily the applicable part, but it does talk about statutory interpretation. So, if we're agreeing that this is a delegation of a definition, you know, which, and Congress, you know, has also passed, you know, on its own, you know, sections where it defines terms for other uses and parts of the code, correct? So, essentially, it's done that here with the Sentencing Commission. When courts look at statutes and they're trying to figure out the definition of a term, they often look to other parts of the code. I think that this court can also do the same thing. That's a different question in applicable, but, like, it still goes to the question of, can a court then completely ignore the Sentencing Commission's definitions? Well, even if, let's assume that I would agree with you that it can't ignore it. The question before us is simply, what, did the district court have any authority outside of the BOP here to rely on anything other than what's an A, B, and C, a note of notes A, B, and C? And here, the district court specifically said that it didn't have authority to rely on anything other than what's in 1A, 1B, and 1C. That's a different question than, do you kind of have to look at this as a guideline in order to make an ultimate determination of what compelling and extraordinary circumstances are? I don't think it is, Your Honor. I think that if you had to look, if it were a statutory interpretation section, that you then had to look for another term, and you said, oh, well, Congress defined it similarly over here, we're going to follow that term. And so, I think that in that same way, the district court would still be, would still reach the same conclusion, that the Sentencing Commission defined extraordinary and compelling in a similar situation over here, and so we should import that definition of extraordinary and compelling where defendants file it. And so, that isn't using exactly the applicable sentencing guideline language. That's using a statutory interpretation. And in cases, you know, from this circuit, you know, we often treat interpreting the guidelines using statutory canons of interpretation as well. So... Mr. Davis, this is Beverly Martin. So, I just want to be sure I'm following your argument. So, the first words of the guideline, 1B1.13, is, quote, upon motion of the director of the Bureau of Prisons. And you say, we read that out of the statute, because it's introductory or whatever. And then, when you get down to D, again, it says, as determined by the director of the Bureau of Prisons, we don't read that out. Right. That's your argument. Can you elaborate on that? Sure, yeah. Yeah, and, you know, I, the, it's the difference between the non-operative part of the guideline, which I believe is just simply orientating towards the statute it's about to promulgate a rule for, and then 1D, which is, first of all, I don't think that that is actually in conflict, because I think if the Sentencing Commission today promulgated 1B1.3, given the way that the new statute is written, it could still promulgate 1D as it is. What are your rules for deciding which parts of a guideline, which is a statute or operative, and which parts are non-operative? What are the rules for that? Well, I think it goes, for here, my rule is, what did Congress intend when it passed 994 A.2 and 994. Congressional intent. On this. And so, you know, that the congressional intent was that it was the Sentencing Commission coming up with the substantive criteria for extraordinary and compelling, not the procedural part of 3582 C.1.A. And what do you make of the fact that we can't know what the Sentencing Commission's intent was, because they haven't had a quorum since the passage of the First Step Act? Well, I think where we don't know where the intent is, Congress, where courts don't have the inherent authority to rewrite the guidelines in a way that Congress itself has limited under 3582. Is it your position that Congress cannot legally empower courts to grant sentence reductions for extraordinary and compelling reasons? No, Congress can do that. I agree. I think this is the statutory scheme, though, that they've come up with that promotes consistency. Everything about this statutory scheme, when read in combination, promotes two things. It promotes being a limited exception, the 3582 B, and it promotes consistency. Having BOP make these types of decisions, frankly, provides consistency across the nation. And that's something that the Sentencing Commission could still value, if, you know, and today promulgate a similar rule. Having district courts do it. No, they can't today. I mean, you agree they can't do that today, because there's no quorum. No quorum, no quorum. Hypothetically, if there was a quorum, the Sentencing Commission could pass 1D again. And that, to me, demonstrates that there is not a conflict. Can we go back to the question of applicable, which is what Judge Locke was asking about? I think the ordinary sort of common understanding of applicable would be helpful or useful meant to apply. I think it's your argument that this guideline fits that definition. Can you explain how that would work? Well, Your Honor, I think it fits the definition because the operative parts of it go to the substance of what is extraordinary and compelling circumstances. And that is what was directed by 99. And the statute said, you know, the statute only uses extraordinary and compelling circumstances once, right? Yeah, it doesn't differentiate between extraordinary and compelling circumstances for one kind of motion and some other kind of motion. It's just once. Sure. I mean, there's another, that's an I, and then there's an II, in which Congress provided a very specific scenario that would justify also a sentence reduction under C1A. But for extraordinary and compelling, it does no further. And in fact, in First Step Act, when it did the amendments, Congress could have, you know, further defined extraordinary and compelling. They do have a subsection I with another scenario that justifies a sentence reduction under C1A. They didn't do that. They could have directed the Sentencing Commission to amend its guidelines. It did that in the Fair Sentencing Act when that was originally passed. It directed the Sentencing Commission to amend its guidelines to be consistent with the new statutory provisions of the First Step Act, or I mean, of the Fair Sentencing Act. So Congress knows that it can do this. One thing I would like to mention about the severability argument, though, about, regarding Note 1D itself is, I don't think you can sever out the first part but leave the remainder of it. And that's because when we're talking about severability, the first part that was mentioned by appellant is, you know, getting rid of that part of the statute that's in conflict. But the second part of severability analysis essentially requires the court to put itself in place where of, we normally say Congress, but here you have to say the Sentencing Commission. You have to put yourself in the place of the Sentencing Commission and had it known at the time of this amendment, what would it have done? And here, I don't think you can say that we know that the Sentencing Commission would have replaced director of BOP in 1D with the district court. There's no evidence of that. And so you can't just sever out that part and then replace it with district court. That's not how severability analysis goes under statutory canons of interpretation. And so I think if you look at the rest of the guideline, the rest of the guideline could have always been written broader by the Sentencing Commission. It could have always given the district court more discretion and it didn't. I think that's how we can tell that in D, it wouldn't necessarily provide that same discretion. And if we can't tell that, you can't draft, you can't sever D in that way. Can I turn you to the 30-day argument? Yes, Your Honor. So, in your view of Ms. Winter's case, are the 30 days passed now and the district courts able to proceed? Your Honor, the district court correctly ruled that this was premature. The timeline is that by her own admission, Winter claims that she filed a reduction in sentence request with BOP on April 8th of 2020 and she filed her motion in the district court on April 10th, 2020. But my question is like, is that frozen in time? I mean, what would she do now to exhaust the 30 days? Is it exhausted now since 30 days have passed? She'd file a new motion. Could she do that today? She could do it today with the appeal pending. What we've done in our district and other cases is when there's an appeal pending on this issue and someone files a new motion, we agree that the district court can rule on it under Rule 37 to deny it. I don't think that she can file that motion and actually obtain her relief until this appeal is finished because of the jurisdictional issue. So, if we take a year to rule on this case, then Bureau of Prisons has no opportunity to consider her motion, even if they thought she was a worthy candidate for her. I think she can file it. I think she can. I know you said that, but what you're saying is they can't rule on it. They can't take any action on it until we rule. Is that, am I understanding your argument? I don't think a district court can necessarily grant it until you rule. But I mean, so I think what you would suggest is that she should dismiss this appeal and go back and file again. Yes. BOP and go through the 30 days, right? Yes. Or a district court can issue an indicative ruling and we could remand for it to have its jurisdiction again. Right. But I think that it has to, I think that under the indicative ruling, our interpretation would be it has the authority to deny it, not to grant it. Right. So, if it was going to grant, it would issue an indicative ruling that would get sent to us. We would then remand for the purpose of entering that ruling and that would move out the appeal, right? Sure. Sure. Right. So, she's not precluded from any sort of relief at all. No. Right. No. But we already know the district court wasn't going to grant a relief anyway on the substance of it. So, it's, I mean, it's- Right. Right. Based on its extraordinary and compelling analysis. But I will say that to date, there have been five circuits that have addressed this administrative relief or administrative exhaustion requirement. The third circuit, the sixth circuit, the fifth circuit, the tenth circuit, and then last week, the seventh circuit. Three of those are published. Most of them are either in, well, all of them are either in our brief or in 28J letters that we have already submitted. In United States versus Elam, the sixth circuit case, that held that this was a mandatory claim processing. And when appellant mentions that we've withdrawn the jurisdictional argument, the department originally asserted that this was a jurisdictional issue. The department has now changed to it's a claim that they agree it's a claim processing, but the effect is the same. Can you address Mr. Weiss's argument, which is an interesting one, that the way that it's written unlike the PLRA, which is from the Ross case that I know you rely on and others have relied on, this is not a directed at, you can't file until rule. This is a court, you cannot, you are not authorized to grant until this is done rule. And given that, is that viewed differently? Do we view it differently? And what does authorized mean in terms of what the court can do? Can it deny without authority? Must it, as Mr. Weiss has said, sit on it for the requisite 30 days before ruling on it? What does all of this mean? Well, so I think Elam actually addresses this to some extent, which is, I don't believe that this allows someone, a defendant to pre-file a motion and then make the court wait 30 days before. I think the statutory language itself says that the court upon a motion of the defendant after the defendant, so it has upon a motion after the defendant as exhausted. And so no court, none of these five circuits have held that a district court has to wait. In Elam, the defendant there only waited 10 days before filing his motion in district court. He filed his request with BOP, waited 10 days, filed it, and Elam said that his motion was premature. And as it was before the district court, Ms. Winter never, never requested to the district court to sit on it for the requisite 30 days before ruling. They never presented that this was- They didn't present that argument, but they did present the argument that as a matter of equity, the court should rule on this right away because of special medical circumstances that she had. Why can't the court, given the way the statute is structured as the court's authority, rely on some sort of equitable authority to rule on something or to sort of skip over the 30-day requirement? Sure. And again, this has been raised in several of these other circuits, and every circuit has held that this is a mandatory claim process. Right. So there is no exception. But counsel, this goes to Mr. Weiss's point that this statute is written a little differently than the statute in Ross, which again said, you can't file this motion until X number of days or until you've done something. In that case, exhausted applicable prison administrative procedures. Here, what Mr. Weiss is saying is the statute is directed at a court cannot rule until this is done. In other words, it's directed at the court's authority. And given that, does the court not have equitable- extreme circumstances, for maybe some undefined reasons, overcome those claims processing rules? You mean equitable and then wait? No. Or equitable and not wait? Right. Not wait. That was the argument she made in her motion. Sure. Sure. Well, again, I think Alam provides some instructive- But counsel, I've read Alam. I understand that you're relying on it. Okay. Okay. What Mr. Weiss is saying is Alam and other courts have gotten it wrong because they've looked at this as a mandatory rule directed at the defendant and not as a rule directed at the court and its authority. I want you to address that point. Sure. Also, if we're going to look at this equitable, I also don't think this is equitable for those defendants that are following the rule. That wait there, that go through the and wait their 30 days before filing. And then someone else pre-files a motion and gets to be heard before a district court. I think that this promotes an orderly progression and gives BOP the opportunity to evaluate. And I don't believe that Congress intended when they amended 3582 to provide sort of parallel decision-making between BOP and a court and then allow a court to also make its decision before BOP has had its 30 days. I think that the statute intends that BOP gets its 30 days to try to make a decision in this case. And that seems to run counter to the intent of Congress giving BOP that 30 days. Anything further, Mr. Davids? No, Your Honor. Just the government requests that this court affirm the district court's decisions in both cases. All right. Thank you. Mr. Hopwood? Yes, Your Honor. I want to go back to some questions that Judge Luck asked. The whole policy statement here is prefaced upon motion of the director of the BOP. So it's not correct to state that the other reasons is uniquely prefaced with language, including the BOP director. Two parts of the policy statement, and those are both clearly relics of the pre-first step back regime. Rather than holding the other reasons provision sometimes fall away and sometimes doesn't, the court can simply hold that those prefatory statements are no longer applicable. And here's the reason why you would not want to read 1D and the other reasons provision out entirely. Government's right. This is like severability, but not identical to. Here, the focus is not on what should be severed and excised or rewritten. It's on what is the plain language definition of applicable is capable of use. The other reasons provision, like the other substantive grounds, medical age and family, are certainly capable of being used. They just cannot be conditioned upon the BOP determining that a defendant's circumstances are extraordinary and compelling. If the government's right here and there is no conflict between 1D and the first step back, the sentencing commission could come back and say, for medical age and family, we're going to make those dependent upon a BOP determination. And the commission would be able to basically take away the changes that Congress made with the first step back. That's clearly not what Congress intended. Congress intended judges to have this authority that BOP previously had under the statute. And you don't have to just take our word for it. Several Meeki groups, the American Conservative Union Foundation, R Street, Cato, they all worked with the White House and the Senate on this bill. They both support us in saying that Congress intended judges to have the power that the BOP director previously held. The DOJ's own inspector general noted the problems that the BOP never used this other reasons provision. It never moved for relief. Congress was responding to that. That's part of not legislative history of the statute, but the history of the statute that, you know, should be taken into consideration. And, you know, our view is that judges are clearly capable of finding when other reasons will warrant a finding of extraordinary and compelling. And nearly two years after the first step back, what we're seeing are judges that are being very careful and using this discretion very wisely and only in the most compelling and extraordinary circumstances granting relief. We'd ask that the court reverse the judgment of the district court here and remand back for the district court to decide whether Mr. Bryant's circumstances are extraordinary and compelling. Thank you, Your Honors. Thank you, Mr. Huffwood. Thank you, Your Honors. I'd like to respond to a number of points that were made by the government with respect to the administrative exhaustion. I first want to just make very clear that we have two separate arguments here. Our first argument is no matter what the nature of the requirement, the 30 days is now up. Separately, we're arguing that even if you say that the 30 days is still ticking, even though it was filed in April and it's now November, that the court has the equitable discretion in unusual circumstances like this to waive it because it's not jurisdictional and it's not mandatory. Our first argument that the 30 days has lapsed would suggest that even if the government is right in characterizing this as mandatory, okay, it's mandatory, but the 30 days is up and we've fulfilled that mandatory requirement. Let me ask you this. Why not just file and just go through this process again? Why as a practical matter is it important for you to identify before? It's one thing if the district court has simply said it's premature, I dismiss or deny without prejudice to renew after the 30 days, but we will know what the district court's going to do if it doesn't get guidance from this court. If we go back, it's going to say, why are you here? I've already determined that you cannot rely on the extraordinary and compelling clause. I've already determined based on my discretion, which by the way, proved completely wrong, I should add, because his discretion at the time was when COVID was just starting that she would essentially be pretty much safe in the hospital. And we've seen how the cases rocketed in the hospital. So this has to go back to him. If it goes back to him, it has to go back after this court has made clear, we hope, that extraordinary and compelling is available and that the court gives some guidance that whatever discretion it exercised at the beginning of COVID has proven wrong as the COVID has ran through the prison infecting inmates and staff as well. And the court's feeling that it was exercising its discretion because she's in a hospital, she's in a prison that's affiliated with the hospital, was misplaced. So we have to find him wrong on his fact finding. Well, I think you do, but I think what you need to say is I'm going to hurl the world back at him that he hurled at us premature. He was making a decision on the factual setting in the prison that was premature. Now, the reason it was premature is we were bringing this motion because we wanted to avoid what happened. In other words, by the necessity of COVID, we have to bring the motion before everybody gets sick and some people die. So we were forced in that situation. But now in retrospect, it's clear that his assessment was wrong. Now, the assessment of a lot of people was wrong. I understand that. But what I'm saying in response to Judge Brasher's question and here is it would have done us no good. We all recognize it would have been an exercise in futility given what the district court wrote to simply drop the appeal and to go back to him. If we go back to him and say, please rule under extraordinary and compelling circumstances, but he's ruled that it's not applicable, where are we? Oh, I see I've run out of time. I want to make one last sentence, if I might. The five cases that Mr. Davis has been talking about that hold mandatory, I want to point out that three out of five are completely different because the defendant never filed anything with the Bureau of Prisons. It wasn't in our case where it filed and 30 days has lapsed. Three of them never filed. So that requirement was never met, not then, not now, not later. And in one of them, the case went so fast that the Court of Appeals ruled within 30 days. So four out of five of those cases, the 30 days was never met. Long sentence, Mr. Rice. Yes. It was a deep breath. It was a deep breath. Thank you. We appreciate the presentation. Very helpful from all counsel. Thank you. Thank you.